Howard Magee (State Bar No. 185199)
hmagee@diversitylaw.com
Nick Rosenthal (State Bar No. 268297)
nrosenthal@diversitylaw.com
Brittany Hernandez (State Bar No. 299044)
bhernandez@diversitylaw.com
**DIVERSITY LAW GROUP, P.C.**
550 S. Hope Street, Suite 2655
Los Angeles, California 90071
(213) 488-6555
(213) 488-6554 facsimile

Attorneys for Plaintiff
MICHAEL RYAN

Steven L. Friedlander (SBN 154146)
sfriedlander@svelf.com
Linda K. Chen (SBN 289515)
lchen@svelf.com
SV EMPLOYMENT LAW FIRM PC
160 Bovet Road, Suite 401
San Mateo, California 94402
Telephone: (650) 265-0222
Facsimile: (650) 265-0223

Attorneys for Defendant
The MITRE Corporation

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RYAN, an individual<br><br>Plaintiff,<br><br>vs.<br><br>THE MITRE CORPORATION; and DOES 1 through 50, inclusive<br><br>Defendants. | Case No. CV 14-03177 CAS (JCGx)<br><br>**JOINT STIPULATION RE: DEPOSITION TESTIMONY**<br><br>[Declaration of Nick Rosenthal in Support Thereof filed concurrently herewith]<br><br>Date:          June 25, 2015<br>Time:          10:00 A.M.<br>Place:         Courtroom 6A<br>Judge:        Hon. Jay C. Gandhi<br><br>Removal Filed:     April 25, 2014<br>Trial:                     October 20, 2015 |

i

**TO DEFENDANT AND ITS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 25, 2015, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 5 of the United States District Court for the Central District of California, located at 411 West Fourth Street, Santa Ana, California 92701, before the Hon. Jay C. Gandhi, Judge presiding, Plaintiff Michael Ryan ("Plaintiff") will and hereby does move the Court for an Order pursuant to U.S. District Court – Central District Rules 37-1 and 37-2, and Rules 26 and 33 of the Federal Rules of Civil Procedure to compel further deposition testimony.

This Motion was brought after counsel for Plaintiff exchanged a series of written correspondence regarding the discovery items at issue and Defendant's counsel either indicated that the parties could not agree to a resolution of the outstanding discovery issue, or failed to timely provide a position either way on the outstanding discovery issue. Although the Parties attempted to resolve this dispute, they were unable to fully resolve the instant discovery dispute.

This Motion is supported by the Local Rule 37-2 Joint Stipulation and the accompanying declarations and exhibits attached thereto, complete files and records in this action, and upon such oral argument as may be made by counsel during the hearing on this Motion, if any.


Dated:  May 29, 2015                    DIVERSITY LAW GROUP, P.C.


                           By:   /S/ NICK ROSENTHAL
                                 Howard L. Magee
                                 Nick Rosenthal
                                 Brittany M. Hernandez
                                 Attorneys for Plaintiff
                                 Michael Ryan

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. PLAINTIFF'S INTRODUCTORY STATEMENT ...................................1

II. DEFENDANT'S INTRODUCTORY STATEMENT.............................2

III. DEPOSITION TESTIMONY AT ISSUE AND DEFENDANT'S RESPONSES THERETO.......................................................................................4

   A.  Deposition of Kelly McSweeney ...............................................4

   B.  Deposition of Josiah Collens ....................................................5

   C.  Deposition of Veronica Spina ...................................................5

   D.  Deposition of Gary Gagnon......................................................6

IV. PLAINTIFF'S CONTENTIONS AND AUTHORITIES ....................8

   A.  Counsel for Defendant Improperly Instructed Deponents Not To Answer On Grounds of Privacy....................................................8

   B.  Deposition Testimony of Kelly McSweeney ............................9

   C.  Deposition Testimony of Josiah Collens.................................10

   D.  Deposition Testimony of Veronica Spina ...............................10

   E.  Deposition Testimony of Gary Gagnon ..................................11

V. DEFENDANT'S CONTENTIONS AND AUTHORITIES...............12

   A.  General Contentions Regarding Defendant's Proper Objections.................12

   B.  Deposition of Kelly McSweeney .............................................17

   C.  Deposition of Josiah Collens ..................................................18

   D.  Deposition of Veronica Spina .................................................18

   E.  Deposition of Gary Gagnon.....................................................20

   F.  Conclusion ..............................................................................21

**JOINT STIPULATION**

Pursuant to Rules 26(b) and 37(a) of the Federal Rules of Civil Procedure and U.S. District Court – Central District Rule ("Local Rule") 37-2, Plaintiff Michael Ryan ("Plaintiff") and Defendant The MITRE Corporation ("Defendant" or "MITRE") hereby submit this Joint Stipulation with respect to Plaintiff's Motion to Compel further deposition testimony.  In accordance with Local Rule 37-1, the parties met and conferred in good faith in both the depositions themselves and through the exchange of written correspondence. Pursuant to Local Rule 37-2, the Parties' positions about how they propose to resolve the disputes are incorporated in their respective sections.

I.

PLAINTIFF'S INTRODUCTORY STATEMENT

Plaintiff Michael Ryan ("Plaintiff") filed the following claims in his operative complaint: Retaliation; Wrongful Termination in Violation of Public Policy; Age Discrimination; Breach of Oral Contract; and Breach of the Covenant of Good Faith and Fair Dealing. In short, Plaintiff's theory of liability is that he was wrongfully terminated for engaging in protected activity under California's Fair Employment and Housing Act ("FEHA") – for opposing illegal workplace behavior perpetrated against co-worker Ms. Rosemarie Bryant. Declaration of Nick Rosenthal ("Rosenthal Dec.") ¶ 3.

Plaintiff seeks an order requiring Defendant The MITRE Corporation ("Defendant") to provide further deposition testimony. Specifically, discovery disputes arose during the depositions of Ms. Kelly McSweeney on February 26, 2015, Mr. Josiah Collens on March 13, 2015, Ms. Veronica Spina on March 20, 2015, and Mr. Gary Gagnon on April 19, 2015. Rosenthal Dec. ¶ 4. Defendant's counsel improperly objected and instructed each deponent not to answer questions on the grounds that the line of questioning was either not relevant to Plaintiff's case, or on the grounds of privacy rights. Rosenthal Dec. ¶ 5. It is generally

improper for counsel at a deposition to instruct a deponent not to answer a question. *Boyd v. University of Maryland Med. System* (D MD 1997) 173 FRD 143,147—instruction not to answer is "presumptively improper"; *see also, Detoy v. City and County of San Francisco*, (N.D. Cal. 2000) 196 F.R.D. 362, 367. If irrelevant questions are asked, the proper procedure is to answer the questions, noting them for resolution at pretrial or trial. *In re Stratosphere Corp. Secur. Litig.* (D NV 1998) 182 FRD 614,618-619—party may object to an irrelevant line of questions, but instructing a witness not to answer is sanctionable; see also, *Bd. Of Trs. Of the Leland Stanford Junior Univ. v. Tyco International LTD.*, (C.D. Cal. 2008) 253 F.R.D. 524, 526.

Responses to said questions are integral to Plaintiff's case in chief because they go to Plaintiff's good faith belief in the validity of the complaints he made regarding discriminatory treatment of a co-worker by the name of Ms. Rosemarie Bryant. Therefore, Plaintiff respectfully requests the Court grant this Motion to Compel further deposition testimony. Rosenthal Dec. ¶ 5.

## II.

## DEFENDANT'S INTRODUCTORY STATEMENT

Plaintiff's employment with MITRE ended on April 22, 2013, as part of a company-wide reduction-in-force ("RIF").  On February 24, 2014, Plaintiff filed this lawsuit in Los Angeles Superior Court ("Complaint") alleging the following seven causes of action: (1) Discrimination Under the Provisions of the California Fair Employment and Housing Act, California Government Code § 12900 et seq.; (2) Wrongful Termination in Violation of Public Policy;(3) Age Discrimination; (4) Breach of Oral Contract; (5) Breach of the Covenant of Good Faith and Fair Dealing; (6) Declaratory Relief; and (7) Retaliation.  On April 25, 2014, MITRE removed the matter to the United States District Court, Central District of California, where it has been set for trial on October 20, 2015.

**PLAINTIFF'S MOTION TO COMPEL DESPOSIITON TESTIMONY OF WITNESSES; JOINT STIPULATION**

Plaintiff's claim for retaliation is based on his allegedly engaging in protected conduct in advocating for Rosemarie Bryant, a subordinate at the MITRE El Segundo site, regarding her medical leave accommodations.  Unknown to MITRE at the time, Plaintiff and Ms. Bryant were engaging in a long-term, sexual relationship in violation of MITRE HR policies (which Plaintiff consistently lied to MITRE about), and Plaintiff used his authority and position at MITRE's El Segundo site improperly to advance Ms. Bryant's cause professionally.

As relevant here, Plaintiff deposed MITRE employees Ms. Kelly McSweeney on February 26, 2015, Mr. Josiah Collens on March 13, 2015, Ms. Veronica Spina on March 20, 2015, and Mr. Gary Gagnon on April 19, 2015. During these depositions, Plaintiff's counsel attempted lines of questioning which were not relevant to Plaintiff's case, violated third-party privacy rights, which MITRE has a duty to protect, and the answers to which would reveal highly confidential information and cause harm to MITRE's former and current employees.  In diversity actions, state law applies; as such, privacy and privilege claims are determined under applicable state law.  (*See* FRE 501; *Oakes v. Halvorsen Marine Ltd.* (C.D.C.A. 1998) 179 F.R.D. 281, 284; *Pearce v. Club Med Sales* (N.D. Cal. 1997) 172 F.R.D. 407, 409.)  Further, where state and federal claims are joined, but the evidence affects only the state claims, the state law of privilege applies.  (*Shaklee Corp. v. Gunnell* (N.D. Cal. 1986) 110 F.R.D. 190, 191.)  Defendants removed this case to federal court on the grounds of diversity of citizenship and defendants did not amend the complaint they filed in state court. Consequently, state privacy and privilege law applies.

In civil actions, "the privilege of a witness … shall be determined in accordance with State law."  (Fed. R. Evid. § 501; *Samuelson v. Susen* (10th Cir. 1978) 576 F.2d 547.)  The MITRE deponents' rights to personal privacy are guaranteed by the California Constitution, Article 1, § 1, which affords individuals a qualified privilege for private matters, including information in their personnel

records.  (*See Board of Trustees of Leland Stanford Jr. University v. Superior Court* (1981) 119 Cal. App. 3d 516; *see also El Dorado Savings & Loan v. Superior Court* (1987) 190 Cal. App. 3rd 342.)  This protection applies equally in federal proceedings. (*See Pearce v. Club Med Sales, Inc.* (N.D. Cal. 1997) 172 F.R.D. 407; *Shaklee Corp. v. Gunnell* (N.D. Cal. 1986) 110 F.R.D. 190, 192.)  Due to the heightened right of privacy afforded by the California Constitution, Plaintiff seeks unjustifiably to intrude into the deponents' privacy without showing how the deposition testimony would substantiate his claims.

Plaintiff's line of questioning with regard to Ms. Bryant, and other MITRE employees, is of a sensitive and highly confidential nature and would involve the revelation of personal and confidential employee information.   MITRE has an affirmative duty to assert the privacy rights of its current and former employees. Plaintiff claims that the lines of questioning at issue in this motion are integral to Plaintiff's case-in-chief; however, this is not the case.   Further, MITRE took a balanced approach and allowed any questioning where Plaintiff was actually involved himself in the communications or events at issue.   Thus, the Court should deny Plaintiff's motion to compel.

III.

<u>DEPOSITION TESTIMONY AT ISSUE AND DEFENDANT'S RESPONSES THERETO</u>

A.    <u>Deposition of Kelly McSweeney</u>

| | |
|---|---|
| Question 1: | Okay. Other than this e-mail exchange, are you aware of any other admonishments Ms. Bryant received from anyone regarding her absences? |
| Mr. Friedlander: | Objection. Privacy. Instruct not to answer. |

*McSweeney Tr. (Confidential)* 85:22-25–86:1

| | |
|---|---|
| Question 2: | What were the nature of the questions asked? |
| Mr. Friedlander: | Objection; privacy. Instruct not to answer. |

*McSweeney Tr. (Confidential)* 94:21-24

4

| | | |
|---|---|---|
| | Question 3: | Did any of these questions relate to Ms. Bryant's alleged sexual orientation? |
| | Mr. Friedlander: | Objection; privacy. Instruct not to answer. |

*McSweeney Tr. (Confidential)* 95:2-5

| | | |
|---|---|---|
| | Question 4: | Did any of these questions relate to Ms. Bryant's time off from work? |
| | Mr. Friedlander: | Objection; privacy. Instruct not to answer. |

*McSweeney Tr. (Confidential)* 95:7-10

B.   <u>Deposition of Josiah Collens</u>

| | | |
|---|---|---|
| | Question 5: | Are you aware of anyone who did look into her past record of performance to determine that she was "damaged goods"? |
| | Mr. Friedlander: | Objection; privacy, except as it relates to communications with Dr. Ryan. |

*Collens Tr.* 124:19-23

C.   <u>Deposition of Veronica Spina</u>

| | | |
|---|---|---|
| | Question 6: | And what were the nature of the complaints that Rose Bryant was alleging during that conversation specifically? |
| | Mr. Friedlander: | Objection; privacy. Instruct not to answer with any of these interviews other than your interview with Mike Ryan. |

*Spina Tr.* 98:4-10

| | | |
|---|---|---|
| | Question 7: | Did you ask Rose Bryant whether – strike that. Did you discuss with any of the other nine individuals, other than Dr. Ryan, the fact that Dr. Ryan was supportive of Rose Bryant in her – specifically regarding her complaints about her treatment within MITRE? |
| | Mr. Friedlander: | Objection; privacy. Instruct not to answer, unless you can provide some proof that any of the others had anything to do with decision-making with respect to Dr. Ryan's employment, and I think there's no foundation for that. |

*Spina Tr.* 119:11-22

| | | |
|---|---|---|
| | Question 8: | Did you come to a conclusion as to whether there was a rumor that Ms. Bryant was being called a porn star by her coworkers? |

5

| | | |
|---|---|---|
| Mr. Friedlander: | Objection; privacy. Instruct not to answer for the reasons previously mentioned. You can talk about the content of your communications with Dr. Ryan. |

*Spina Tr.* 143:21-22–144:1

| | | |
|---|---|---|
| Question 9: | Did you come to any conclusion regarding whether there were rumors that Rose Bryant was a lesbian in the workplace? |
| Mr. Friedlander: | Objection. Privacy. Instruct not to answer on the same grounds. You're welcome to talk about all communications with Dr. Ryan. |

*Spina Tr.* 144:12-14

| | | |
|---|---|---|
| Question 10: | Did you ever come to a conclusion as to whether MITRE employees felt that Rose Bryant was milking the system while on FMLA? |
| Mr. Friedlander: | Objection; privacy. Instruct not to answer. |

*Spina Tr.* 145:1-5

| | | |
|---|---|---|
| Question 11: | Did you ever come to a conclusion as to whether MITRE employees felt Ms. Bryant was in collusion with her doctor to get time off from work? |
| Mr. Friedlander: | Objection; privacy. Instruct not to answer. |

*Spina Tr.* 145:9-14

D.   <u>Deposition of Gary Gagnon</u>

| | | |
|---|---|---|
| Question 12: | And I was asking you now, can you articulate for me examples as to wherein Josh Collens' skill set was better than Dr. Ryan's in your opinion as it relates to national security space? |
| Mr. Magee: | I'm not asking for specific … |
| Mr. Friedlander: | Yes, I agree with that. You can ask about exposure to areas for example, I'm fine with that. Like his knowledge of exposure to areas that Josh might have had versus Dr. Ryan, but in terms of performance assessments, that's private information and I will instruct the witness not to answer with respect to performance assessments of Josh Collens. |

*Gagnon Tr.* 64:12-15,22-25–65:1-6.

**PLAINTIFF'S MOTION TO COMPEL DESPOSIITON TESTIMONY OF WITNESSES; JOINT STIPULATION**

| | |
|---|---|
| Question 13: | Can you give me examples of those AC7's that heard that message loud and clear which let to production? |
| Mr. Friedlander: | Objection to the extent that it calls for private information with respect to the performance of other employees. |

*Gagnon Tr.* 99:2-7

| | |
|---|---|
| Question 14: | What other AC7's if any, did this occur with that you can think of for the fiscal year of 2012? |
| Mr. Friedlander: | Objection. Privacy. Instruct not to answer. |

*Gagnon Tr.* 102:9-12

| | |
|---|---|
| Question 15: | One to ten. And did any of those individuals wherein the ball was dropped so to speak, where they did not sign off on the P&D, did any of those individuals receive a three? |
| Mr. Friedlander: | Objection. Privacy. Instruct not to answer. |

*Gagnon Tr.* 104:5-10

| | |
|---|---|
| Question 16: | Prior to Dr. Ryan's lawsuit, have you ever heard any allegations regarding Jim Dimarogonas, expressing the sentiment that Rosemarie Bryant was using FMLA as an excuse to get out of work and that she might be in collusion with her doctor? |
| Mr. Friedlander: | Objection. Privacy. Instruct not to answer except if Dr. Ryan was involved and Mr. Gagnon knows of Dr. Ryan's involvement either through communications with him or hearing about Dr. Ryan's involvement. |

*Gagnon Tr.* 136:3-12

| | |
|---|---|
| Question 17: | Prior to Dr. Ryan's lawsuit, had you ever heard any allegations regarding John Woodward expressing the sentiment that Rosemarie Bryant was using FMLA as an excuse to get out of work and that she might be in collusion with her doctor? |
| Mr. Friedlander: | Objection. Instruct not to answer. Privacy. Except if such information came through Dr. Ryan or had Dr. Ryan's involvement. |

*Gagnon Tr.* 139:10-17

| | |
|---|---|
| Question 18: | Did you ever hear anyone express frustration over Rosemarie Bryant's use of FMLA time? |

**PLAINTIFF'S MOTION TO COMPEL DESPOSIITON TESTIMONY OF WITNESSES; JOINT STIPULATION**

| | | |
|---|---|---|
| Mr. Friedlander: | Same objections. Except as it involves Dr. Ryan. Instruct not to answer to that extent. | |

*Gagnon Tr.* 140:15-19

| | | |
|---|---|---|
| Question 19: | Prior to Dr. Ryan's lawsuit had you ever heard of an allegation that Josh Collens called Rosemarie Bryant damaged goods and wished that he had never supported her for the Milsatcom, that's M-I-L-S-A-T-C-O-M, position with technical director, John Wilson? | |
| Mr. Friedlander: | Same objections. If it has anything to do with Dr. Ryan you can testify, otherwise instruct not to answer on the basis of privacy. | |

*Gagnon Tr.* 141:9-18

| | | |
|---|---|---|
| Question 20: | Prior to Dr. Ryan's lawsuit, had you ever become aware of any gossip and accusations surrounding Rosemarie Bryant? | |
| Mr. Friedlander: | Same objections. Instruct not to answer except in connection with anything having to do with Dr. Ryan. | |

*Gagnon Tr.* 141:22-25–142:1-2

## IV.

## PLAINTIFF'S CONTENTIONS AND AUTHORITIES

A.    Counsel for Defendant Improperly Instructed Deponents Not To Answer On Grounds of Privacy

"An objection at the time of the examination – whether to evidence, to a party's conduct, … , to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds…" *Bd. Of Trs. Of the Leland Stanford Junior Univ. v. Tyco International LTD.*, (C.D. Cal. 2008) 253 F.R.D. 524, 526. Counsel may only instruct a deponent not to answer when "necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2); see also *Shapiro v. Paul Revere Life Ins. Co.*, 1997 U.S. Dist. LEXIS 16286, at *2 (N.D. Cal. 1997) (Rule 30(c)(2) "provides exclusive grounds for instructing a deponent not to answer"); *Detoy v. City and County of San Francisco*,

(N.D. Cal. 2000) 196 F.R.D. 362, 367 (counsel "shall refrain from instructing a witness not to answer, except as provided in Rule 30 [(c)(2)]").

With respect to the privacy objections, said objections were improper. Although federal courts do recognize a general right of privacy, it is not absolute and the nature of the privacy will be weighed against the need for the information and interest in disclosure. *Rubin v. Regents of Univ. of Cal.*, 114 F.R.D. 1, 2 (N.D. Cal. 1986). Under both California law and federal law, courts apply a balancing test to assess whether the need for the information sought outweighs the privacy right asserted. *Haddad v. Monumental life Ins. Co.*, 2013 U.S. Dist. LEXIS 167705 (N.D. Cal. Nov 22, 2013).

Despite clear rules to the contrary, Defense Counsel continuously advised deponents not to answer, further preventing Plaintiff from obtaining information to support his case. As a threshold matter, there is a protective order in place for confidential matters, so any privacy concerns are moot. Additionally, Ms. Rosemarie Bryant has no reasonable expectation of privacy because she put her claims in the public record when she filed her case. (*See attached* Exhibit "A" to the Declaration of Nick Rosenthal). The information sought by the questions goes directly to Plaintiff's claims and therefore the relevance outweighs any negligible privacy interests.

B.   Deposition Testimony of Kelly McSweeney

 Regarding question number 1, Plaintiff's counsel asked whether Ms. McSweeney was aware of any other admonishments Ms. Bryant had received regarding her absences. This question goes to Plaintiff's good faith belief that Ms. Bryant was being harassed due to the exercise of her FMLA leave rights. Internal communications pertaining to Ms. Bryant's absences are relevant and will certainly lend support to Plaintiff's claim that he had a good faith belief that Ms. Bryant was being harassed due to absences resulting from her protected leave. This goes to the heart of Plaintiff's retaliation claim which is that he was terminated in response to

PLAINTIFF'S MOTION TO COMPEL DESPOSIITON TESTIMONY OF WITNESSES; JOINT
STIPULATION

complaints he made about Defendants discriminatory treatment of Ms. Bryant.

Additionally, questions 2 through 4 pertain to an HR investigation that Ms. McSweeney and Plaintiff participated in. MITRE's HR investigation into Ms. Bryant's treatment is directly relevant to Plaintiff's claims that he was retaliated against because he complained of what he perceived to be illegal treatment directed at Ms. Bryant. The interview questions being asked could reveal that MITRE had knowledge of harassment or discrimination to which Ms. Bryant had been subjected. Additionally, the content of the investigation could demonstrate that Plaintiff's complaints were substantiated thereby establishing his "good faith belief" in them.

C.    Deposition Testimony of Josiah Collens

Regarding question number 5, Mr. Collens was asked if anyone had looked into Ms. Bryant's past record of performance to determine that she was "damaged goods" because of the FMLA leave she took. It is Plaintiff's theory of retaliation that he was subjected to adverse action in response to advocating on behalf of Ms. Bryant because he believed she was being discriminated against based on comments like her being "damaged goods." Thus, this question goes directly to Plaintiff's good faith belief that Ms. Bryant was being subjected to illegal discrimination and harassment.

D.    Deposition Testimony of Veronica Spina

In questions 6 and 7, Ms. Spina was asked for further details pertaining to the HR investigation—particularly, the nature of the complaints. These questions go to the issue of Plaintiff's good faith belief that Ms. Bryant was being harassed and/or discriminated against due to her perceived sexual orientation and exercise of FMLA rights. The content of the investigation is critical to Plaintiff's case. Obviously, if there were rumors floating around MITRE regarding Ms. Bryant's sexual orientation or veracity with respect to the exercise of FMLA rights, it would validate Plaintiff's good faith belief that Ms. Bryant was being subjected to illegal

workplace conduct.

Finally, regarding questions 8 through 11, the questions asked whether Ms. Spina discussed Plaintiff's support of Ms. Bryant with each individual interviewed as part of the HR investigation and whether Ms. Spina came to any conclusions resulting from the HR investigation.[1] Ms. Spina's investigation into Ms. Bryant's treatment is directly relevant to Plaintiff's claims. The interview questions being asked and discussions therein could reveal that MITRE had knowledge of harassment or discrimination to which Ms. Bryant had been subjected. Further, any privacy concerns are outweighed by the relevance to Dr. Ryan's case; the relevance here being Dr. Ryan's good faith belief in the validity of Ms. Bryant's complaints that she was being harassed and/or discriminated against due to her FMLA leave and perceived sexual orientation. Therefore, knowing details about what other people's perceptions or opinions were regarding Dr. Ryan's advocacy on behalf of Ms. Bryant is crucial to this case.

E.    Deposition Testimony of Gary Gagnon

Regarding question 12, Mr. Gagnon was asked, in his opinion, to articulate examples as to whether Josh Collens' skill set was better than Plaintiff's as it relates to national security space. Both Plaintiff and Mr. Collens played a role in national security space functions. This question goes directly to Plaintiff's age discrimination claim. Defendant needs to be able to justify why a younger person took the job of an older person and to do so, an analysis of each of these individuals' qualifications is necessary.

Also, Mr. Gagnon was asked questions 13 through 15 that related to AC-7's and performance reviews. Mr. Gagnon had testified that he and Ray Haller evaluated Plaintiff's performance relative to other AC-7's performances. As such, these questions are relevant to the legitimacy of Plaintiff's "3" rating which

---

[1] Specifically, Ms. Spina was asked if she came to any conclusions as to whether rumors regarding Ms. Bryant's sexual orientation, being a porn star, milking the system while on FMLA, and being in collusion with her doctor, were unfounded.

**PLAINTIFF'S MOTION TO COMPEL DESPOSIITON TESTIMONY OF WITNESSES; JOINT STIPULATION**

Defendant maintains is the basis for Plaintiff's termination. Privacy interests are outweighed when considering Plaintiff's need to obtain this information. It is relevant to Plaintiff's case whether or not any other employee whose P&D were not signed received a "3" ranking. It is Plaintiff's position that he was singled out for various illegal reasons and that this is reflected in Defendant's failure to adhere to proper process. As such, it is vital to establish why the P&D process was not adhered to and absolutely necessary to determine if the "ball was dropped" for any other AC-7 during Plaintiff's last year of employment with Defendant.

Finally, Mr. Gagnon was asked questions 16 through 20 relating to Ms. Bryant's treatment by Defendant. These questions go to Dr. Ryan's good faith belief that Ms. Bryant was being harassed or discriminated against due to her FMLA leave and perceived sexual orientation. If Mr. Gagnon heard any improper comments or rumors regarding Ms. Bryant, regardless if it was from Plaintiff or anyone else, to the extent it was on Mr. Gagnon's radar, it would operate to validate Plaintiff's good faith belief that Ms. Bryant was being harassed and/or discriminated against.

V.

DEFENDANT'S CONTENTIONS AND AUTHORITIES

A.  General Contentions Regarding Defendant's Proper Objections

In connection with this matter, Plaintiff deposed MITRE employees Ms. Kelly McSweeney on February 26, 2015, Mr. Josiah Collens on March 13, 2015, Ms. Veronica Spina on March 20, 2015, and Mr. Gary Gagnon on April 19, 2015. During these depositions, Plaintiff's counsel attempted lines of questioning which were not relevant to Plaintiff's case, violated third-party privacy rights, which MITRE has a duty to protect, and the answers to which would reveal highly confidential information and cause harm to MITRE's former and current employees.  In diversity actions, state law applies; as such, privacy and privilege

claims are determined under applicable state law.  (*See* FRE 501; *Oakes v. Halvorsen Marine Ltd.* (C.D.C.A. 1998) 179 F.R.D. 281, 284; *Pearce v. Club Med Sales* (N.D. Cal. 1997) 172 F.R.D. 407, 409.)  Further, where state and federal claims are joined, but the evidence affects only the state claims, the state law of privilege applies.  (*Shaklee Corp. v. Gunnell* (N.D. Cal. 1986) 110 F.R.D. 190, 191.)  Defendants removed this case to federal court on the grounds of diversity of citizenship and defendants did not amend the complaint they filed in state court.  Consequently, state privacy and privilege law applies.

In civil actions, "the privilege of a witness … shall be determined in accordance with State law."  (Fed. R. Evid. § 501; *Samuelson v. Susen* (10th Cir. 1978) 576 F.2d 547.)  The MITRE deponents' rights to personal privacy are guaranteed by the California Constitution, Article 1, § 1, which affords individuals a qualified privilege for private matters, including information in their personnel records.  (*See Board of Trustees of Leland Stanford Jr. University v. Superior Court* (1981) 119 Cal. App. 3d 516; *see also El Dorado Savings & Loan v. Superior Court* (1987) 190 Cal. App. 3rd 342.)  This protection applies equally in federal proceedings. (*See Pearce v. Club Med Sales, Inc.* (N.D. Cal. 1997) 172 F.R.D. 407; *Shaklee Corp. v. Gunnell* (N.D. Cal. 1986) 110 F.R.D. 190, 192.)  Due to the heightened right of privacy afforded by the California Constitution, Plaintiff seeks unjustifiably to intrude into the deponents' privacy without showing how the deposition testimony would substantiate his good-faith claim.

The right to privacy is codified in California as set forth in Article I, Section 1 of the California Constitution:  "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety, happiness, and privacy."  Discovery orders are "state-compelled disclosure" and therefore the privacy rights protected by the California Constitution are equally

applied to purely private litigation.  (*Britt v. Superior Court of San Diego County* (1978) 20 Cal. 3d 844, 856, fn.3 (right of privacy may be invoked by a litigant as justification for a refusal to answer questions which unreasonably intrude on that right); *see also Vinson v. Superior Court (Peralta Community College Dist.)* (1987) 43 Cal. 3d 833.)  Even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed, there must then be a "careful balancing" of the "compelling public need" for discovery against the "fundamental right of privacy."  (*Board of Trustees of Leland Stanford Jr. University v. Superior Court of Santa Clara County* (1981) 119 Cal. App. 3d 516, 525.)

California courts have extended the right to privacy to encompass a privilege justifying a litigant's refusal to answer deposition questions unreasonably intruding on this right.  (*Condit v. Dunne* (S.D.N.Y. 2004) 225 F.R.D. 100, 108.)  When this privilege conflicts with the need for truthful discovery, California courts apply a balancing test to determine whether the public interest in discovery outweighs the private interest in the privilege.  (*See Hill v. Nat'l Collegiate Athletic Assn.* (1994) 7 Cal. 4th 1 ("Even at the risk of losing some degree of flexibility in decision making, a constitutional standard that carefully weighs the pertinent interests at stake in an ordered fashion is preferable to one dominated by the vague and ambiguous adjective 'compelling.'")  The state standard thus requires that the party seeking discovery of information within the "zone of privacy" must show that the information is *essential* to determining the truth of the disputed matters and is not available from other sources or through less intrusive means.  There is an *even higher burden* where a *third party's* privacy rights are affected.  A plaintiff's need for information "will not easily override a third party's privacy rights."  (*Olympic Club v. Sup.Ct. (City & County of San Francisco)* (1991) 229 Cal. App. 3d 358, 363.)

Plaintiff has not shown that the information sought is essential to determining the truth of the disputed matters, and it is not.  In fact, Plaintiff did not even respond to Defendants' response, sent on April 9, 2015, to his meet and confer letter and now moves to compel further testimony.  Plaintiff's line of questioning with regard to Ms. Bryant, and other MITRE employees, is of a sensitive and highly confidential nature and would involve the revelation of personal and confidential employee information.  MITRE has an affirmative duty to assert the privacy rights of its current and former employees.  Plaintiff claims that the lines of questioning at issue in this motion are integral to Plaintiff's case-in-chief, however, these questions would not provide information essential to determining the truth of the disputed matters.

Before setting forth MITRE's specific contentions with regard to the deposition testimony at issue, MITRE maintains the following positions:

- Ms. Bryant has a right of privacy and MITRE does not have the right to waive that right of privacy.

- MITRE asked Plaintiff to get a written waiver from Ms. Bryant with respect to her privacy rights and Plaintiff did not do so.

- Plaintiff had the right to depose Ms. Bryant so she could waive (or not waive) her privacy rights and Plaintiff did not do so.

- One of Plaintiff's legal claims is that his employment was terminated in retaliation for raised issues with respect to Ms. Bryant's employment.  In balancing Ms. Bryant's right to privacy against Plaintiff's right to obtain discovery on his legal claim of retaliation, MITRE allowed discovery (written and in deposition) *on any issues where Plaintiff was involved*.  For example, MITRE produced Plaintiff's statement to Ms. Spina in her investigation and allowed Plaintiff to ask any questions he wanted to ask about Ms. Spina's interview with Plaintiff.  Likewise, throughout the

**PLAINTIFF'S MOTION TO COMPEL DESPOSIITON TESTIMONY OF WITNESSES; JOINT STIPULATION**

deposition process MITRE has allowed Plaintiff to ask anything where Plaintiff was involved.  By definition, ***Plaintiff is asking for information about Ms. Bryant where Plaintiff was not involved***.

- Plaintiff has taken the position that Ms. Bryant's privacy rights are protected by the protective order in this case.  However, Ms. Bryant has never taken that position and it is basic that she continues to have privacy rights irrespective of the existence of a protective order in this case.  Indeed, Plaintiff decided not to directly involve Ms. Bryant in this matter (either through deposing her or asking her to waive her privacy right, both of which were suggested by MITRE's counsel) because she does not want her private information in the hands of Plaintiff or his counsel, let alone the subject of the public court record in this case.  Note Plaintiff's inconsistent argument in this case, which has a protective order, that Plaintiff is entitled to insist upon <u>his</u> own right of privacy despite the existence of the protective order.

- Plaintiff has argued that Ms. Bryant waived her privacy right in this matter by filing ***her*** litigation.  MITRE disagrees and, in any event, it is not MITRE's obligation or right to provide Ms. Bryant's private information.  Rather, that is a decision to be made by Ms. Bryant.  Note also Plaintiff's inconsistent argument in discovery in this case that <u>he</u> retains a privacy right although he filed this lawsuit and there is a protective order in this matter.

- Plaintiff has argued that Ms. Bryant's private information that Plaintiff does not know about goes to Plaintiff's good faith belief.  If Plaintiff does not know about the information then, by definition, it does not go to his good faith belief.

MITRE believes that it has taken the proper approach that both balances Ms. Bryant's privacy rights and gives Plaintiff the information he needs with respect to his retaliation claims.

---

B.    Deposition of Kelly McSweeney

With regard to Question 1, Plaintiff claims it goes toward the issue of Dr. Ryan's good faith belief that Ms. Bryant was being harassed due to her FMLA leave.  However, this line of questioning has no bearing on *Dr. Ryan's* beliefs nor is it reasonably calculated to lead to admissible evidence of Dr. Ryan's beliefs.  It cannot be established from this line of questioning that *Ms. McSweeney's* knowledge of Ms. Bryant's absences would have any bearing on Dr. Ryan's knowledge or relevance in this matter.  Plaintiff also claims this question lends support to the claim that Plaintiff had a good faith belief that Ms. Bryant was being harassed.  Again, the line of questioning with regard to Ms. McSweeney's knowledge has no bearing on Plaintiff's claims.  Plaintiff further claims this goes to the heart of his retaliation claim, however, there is no indication that Plaintiff, or his supervisors, or anyone in his chain of command with authority over Plaintiff, were aware of these communications.  In deposition, Plaintiff was allowed to ask anything concerning Ms. Bryant to the extent Plaintiff was involved (which goes to the issue of his subjective good faith).

With regard to Questions 2 through 4, Plaintiff claims it might reveal whether MITRE had knowledge of harassment or discrimination, which Ms. Bryant claims to have been subjected.  However, again, this line of questioning has no bearing on Plaintiff's case and is not reasonably calculated to lead to admissible evidence.  (Please see response in preceding paragraph.)  The investigation in connection with Ms. Bryant was attorney-client privileged and unrelated to Plaintiff's claims.  In addition, as seen in Ms. Spina's deposition, Plaintiff was fully allowed to ask about Plaintiff's involvement in the investigation.  Further, Plaintiff's statement to Ms. Spina from the investigation was produced in discovery.  Asking Ms. McSweeney these questions borders on harassing and is clearly not related to Plaintiff's case.

**PLAINTIFF'S MOTION TO COMPEL DESPOSIITON TESTIMONY OF WITNESSES; JOINT STIPULATION**

C.    Deposition of Josiah Collens

With regard to Question 5, Plaintiff claims it goes toward the issue of Dr. Ryan's good faith belief that Ms. Bryant was allegedly being subjected to illegal discrimination and harassment.  However, this line of questioning has no bearing on Dr. Ryan's beliefs nor is it reasonably calculated to lead to admissible evidence of Dr. Ryan's beliefs.  It cannot be established from this line of questioning that Mr. Collens' knowledge of anyone looking into Ms. Bryant's past record of performance would have any relevance in this matter, let alone any bearing on Dr. Ryan's good faith belief.

D.    Deposition of Veronica Spina

With regard to Questions 6 and 7, Plaintiff claims it goes to the issue of Dr. Ryan's good faith belief that Ms. Bryant was allegedly being harassed due to her perceived sexual orientation and exercise of FMLA rights.  However, this line of questioning has no bearing on Dr. Ryan's beliefs nor is it reasonably calculated to lead to admissible evidence of Dr. Ryan's beliefs.  It cannot be established from this line of questioning that Ms. Spina's knowledge or recollection of alleged perceived harassment of Ms. Bryant or Ms. Bryant's complaints would have any relevance in this matter, let alone any bearing on Dr. Ryan's good faith belief.

Plaintiff claims that the information sought would somehow validate Dr. Ryan's good faith belief that Ms. Bryant was being subjected to illegal workplace conduct.  This argument is flawed and misplaced.  To argue that Dr. Ryan has a good faith belief in Ms. Bryant's alleged illegal treatment because a *third-party* allegedly has knowledge of such allegations and/or complaints is conclusory and without basis.  The only thing relevant to Dr. Ryan's good faith belief argument is *Dr. Ryan's* knowledge and involvement, not that of those around him.  The investigation in connection with Ms. Bryant was attorney- client privileged and unrelated to Plaintiff's claims.  In addition, as seen in Ms. Spina's deposition,

Plaintiff was fully allowed to ask about Plaintiff's involvement in the investigation. Further, Plaintiff's statement to Ms. Spina was produced in discovery.  Plaintiff was allowed to ask anything concerning Ms. Bryant to the extent Plaintiff was involved (which goes to the issue of his subjective good faith), however, the line of questioning Plaintiff pursued could not be answered without revealing highly confidential private information, the revelation of which is harmful to a third party.

With regard to Questions 8 through 11, Plaintiff pursued an offensive line of questioning tantamount to a fishing expedition regarding alleged rumors about Ms. Bryant, including her sexual orientation, rumors of being a porn star, milking the system while on FMLA, and being in collusion with her doctor.  Plaintiff claims these questions might reveal whether MITRE had knowledge of harassment or discrimination, which Ms. Bryant claims to have been subjected.  However, again, this line of questioning has no bearing on Plaintiff's case or knowledge and is not reasonably calculated to lead to admissible evidence.  The investigation in connection with Ms. Bryant was attorney-client privileged and unrelated to Plaintiff's claims.  In addition, Plaintiff was fully allowed to ask about Plaintiff's involvement in the investigation during the deposition.  Further, Ms. Spina's notes from Plaintiff's interview was produced in discovery.  MITRE also took the position that if Plaintiff could demonstrate that any of the persons involved in Ms. Spina's investigation were decision-makers with respect to Plaintiff's employment, MITRE would allow Ms. Spina to testify as to anything said about Plaintiff in her interviews with such other persons.  However, no one interviewed by Ms. Spina was a decision-maker with respect to Plaintiff's employment.  Indeed, as Mr. Gagnon's deposition made clear, he and Mr. Haller were the decision-makers with respect to Plaintiff's employment and were the ones that gave Plaintiff a performance rating of "3" in his review immediately prior to the April RIF.

Further, Plaintiff had the right to and did ask Mr. Gagnon questions about his knowledge of any activity by Plaintiff on behalf of Ms. Bryant.

E.    Deposition of Gary Gagnon

With regard to Question 12, Plaintiff claims that it goes directly to Plaintiff's age discrimination claim because a younger person took the job of an older person. Mr. Collens has his own right of privacy, which he clearly has not waived, and that right protects any questions about the details of Mr. Collens' performance assessment. Here, Mr. Collens' privacy right must be balanced with Plaintiff's claim, MITRE allowed Mr. Collens to testify as to his age and whether or not he received a "3" in the performance review period prior to the April RIF. Plaintiff's employment was terminated as part of the April RIF (along with approximately 100 others) due to his "3" rating. Further, Mr. Gagnon fully explained in his deposition why Plaintiff received a "3" in his performance rating, also making clear that the rating was given prior to the time it was decided by MITRE a RIF would occur and prior to the determination of the April RIF criteria. Any further response to this line of questioning would require highly confidential, third-party information to be revealed, the revelation of which would cause harm.

With regard to Questions 13 through 15, Plaintiff claims that it is relevant to the legitimacy of Dr. Ryan's "3" rating, and that the privacy interests of others are outweighed by Plaintiff's need for this information. Plaintiff's employment was terminated as part of the April RIF (along with approximately 100 others) due to his "3" rating. Further, Mr. Gagnon fully explained in his deposition why Plaintiff received a "3" in his performance rating, also making clear that the rating was given prior to the time it was decided a RIF would occur and prior to the determination of the April RIF criteria. In balancing these employees' privacy rights against the need for information in this litigation, their privacy rights would trump. As stated above, state law applies in diversity actions; as such, privacy claims are determined under applicable state law and Plaintiff has not

demonstrated that the information sought is essential to determining the truth of the disputed matters with respect to his case.

With regard to Questions 16 through 20, again, the line of questioning with regard to rumors regarding Ms. Bryant has no bearing on Plaintiff's claims. Plaintiff claims these questions go to his good faith belief that Ms. Bryant was being harassed or discriminated against due to illegal reasons, however, there is no indication that Plaintiff, or his supervisors, or anyone in his chain of command with authority over Plaintiff, were aware of these rumors and/or alleged communications. As indicated in the deposition, Plaintiff was allowed to ask anything he wanted concerning Ms. Bryant to the extent Plaintiff was involved (which goes to the issue of his subjective good faith), which he did.

Plaintiff further claims that the information sought would somehow validate Dr. Ryan's good faith belief that Ms. Bryant was being subjected to illegal workplace conduct. This argument is flawed and misplaced. To argue that Dr. Ryan had a good faith belief in Ms. Bryant's alleged illegal treatment because a *third-party* allegedly had knowledge of such allegations and/or complaints is conclusory and without basis. The only thing relevant to Dr. Ryan's good faith belief argument is *Dr. Ryan's* knowledge and involvement, not that of those around him.

F.    Conclusion

The right to privacy stems from the California Constitution and a litigant's right to conduct discovery to pursue his claim will not easily override such an interest. To date, Plaintiff has not shown that the information sought is essential to determining the truth of the disputed matters and Plaintiff's motion to compel must this be denied.

///

///

///

PLAINTIFF'S MOTION TO COMPEL DESPOSIITON TESTIMONY OF WITNESSES; JOINT
STIPULATION

Dated:  May 29, 2015                    DIVERSITY LAW GROUP, P.C.


                                        By:    /S/ NICK ROSENTHAL
                                               Howard L. Magee
                                               Nick Rosenthal
                                               Attorneys for Plaintiff
                                               Michael Ryan


Dated:  May 29, 2015                    SV EMPLOYMENT LAW FIRM PC


                                        By:    /S/ LINDA K. CHEN
                                               Steven L. Friedlander
                                               Linda K. Chen
                                               Attorneys for Defendant

**PLAINTIFF'S MOTION TO COMPEL DESPOSIITON TESTIMONY OF WITNESSES; JOINT STIPULATION**